JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE PEGGS COMPANY, INC., a corporation,<br><br>Defendant. | Case No. 5:21-cv-01700-SPG-SHK<br><br>**ORDER DISMISSING ENTIRE ACTION**<br><br>**FRCP 41(a)(2)**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

## ORDER

Good cause appearing, and the Parties having stipulated and agreed, IT IS HEREBY ORDERED as follows:

The Complaint filed in this matter by Plaintiff Center for Community Action and Environmental Justice and all claims against Defendant The Peggs Company, Inc. set forth therein are hereby dismissed in their entirety. Each party is to bear their own attorney fees and costs, except as provided for the in the Settlement Agreement, a copy of which is attached hereto as **Exhibit 1** and incorporated herein by reference.

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: March 13, 2023

_____
HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the Center for Community Action and Environmental Justice ("CCAEJ") and The Peggs Company, Inc. ("The Peggs Company") (CCAEJ and The Peggs Company are also individually referred to herein as a "SETTLING PARTY" and the parties collectively are referred to as the "SETTLING PARTIES")) with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, CCAEJ is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to working with communities to improve the social and natural environment;

**WHEREAS**, The Peggs Company owns and operates a shopping cart manufacturing facility located at 4851 Felspar Street in Riverside, California (the "Facility");

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Order No. 2014-0057-DWQ, as amended in 2015 and 2018 (hereinafter the "General Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §§ 1251 *et seq.*;

**WHEREAS**, the General Permit includes the following requirements for all permittees, including The Peggs Company: 1) develop and implement a storm water pollution prevention plan ("SWPPP"); 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants; 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

**WHEREAS**, on or about June 16, 2021, CCAEJ served The Peggs Company, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of

1

Santa Ana Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit under Sections 505(a)(1) and (f) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A) ("60-Day Notice Letter"), alleging violations of the Act and the General Permit at the Facility;

 **WHEREAS**, on October 6, 2021, CCAEJ filed its Complaint in the United States District Court for the Central District of California (*Center for Community Action and Environmental Justice v. The Peggs Company, Inc.*, Case No. 5:21-cv-01700-JWH-SHK).  The Complaint and 60-Day Notice Letter are incorporated herein by reference;

**WHEREAS**, CCAEJ contends in its 60-Day Notice Letter and Complaint that, among other things, The Peggs Company has repeatedly discharged polluted storm water in violation of the General Permit and the Clean Water Act;

**WHEREAS**, The Peggs Company denies any and all of CCAEJ's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, subsequent the date of the Complaint, in an effort to provide further filtration of storm water prior to discharge, The Peggs Company has implemented additional filtration socks (*e.g.*, Ultratech 9457 Ultra-Filter sediment filter socks, Ultratech 9454 Ultra-Filter heavy metal filter socks);

**WHEREAS**, subsequent to the date of the Complaint, The Peggs Company removed the rusty metal materials stored along the northern portion of the Facility in Drainage Area B;

**WHEREAS**, the SETTLING PARTIES, through their authorized representatives and without either adjudication of CCAEJ's claims or admission by The Peggs Company of any alleged violation or other wrongdoing, have chosen to resolve in full CCAEJ's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CCAEJ and The Peggs Company have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CCAEJ's allegations set forth in the 60-Day Notice Letter and Complaint.

2

NOW, **THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CCAEJ and The Peggs Company do hereby agree as follows:

<u>**TERM OF AGREEMENT**</u>

**1.**     The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a SETTLING PARTY to this AGREEMENT is executed.

**2.**     Unless an extension is agreed to in writing by the SETTLING PARTIES, this AGREEMENT shall terminate eighteen months after the implementation of the treatment system described below in Paragraph 6(a), or through the conclusion of any proceeding to enforce this AGREEMENT or until the completion of any payment or affirmative duty required by this AGREEMENT (the "Termination Date").

<u>**COMMITMENTS OF CCAEJ**</u>

**3.**     **Stipulation to Dismiss and [Proposed] Order**.  Within ten (10) calendar days of the Agency Approval Date, as defined in Paragraph 4 below, CCAEJ shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Central District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that CCAEJ is dismissing with prejudice all claims in CCAEJ's Complaint.  Consistent with Paragraphs 21-23 herein, the Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction over the SETTLING PARTIES for purposes of resolving disputes between the SETTLING PARTIES, with respect to enforcement of any provision of this AGREEMENT incorporated into the District Court's Order, through the Termination Date, as defined in Paragraph 2 above, or through the conclusion of any proceeding to enforce this AGREEMENT, or until the completion of any payment or affirmative duty required by this AGREEMENT.  In the event that the District Court chooses not to enter the Order, CCAEJ and The Peggs Company agree to meet and confer to attempt to resolve the issue(s) raised by the District Court.  If CCAEJ and The Peggs Company are unable to resolve any issue(s) raised by the District Court, CCAEJ and The Peggs Company agree to expeditiously seek a settlement conference with the Magistrate

3

SETTLEMENT AGREEMENT: *Center for Community Action and Environmental Justice v. The Peggs Company–*
Case No. 5:21-cv-01700-JWH-SHK

Judge assigned to this matter to resolve the issue(s).  If the SETTLING PARTIES cannot resolve the issue(s) through a settlement conference, this AGREEMENT shall be null and void.

4.     **Review by Federal Agencies**.  CCAEJ shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5.  The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, and the confirming correspondence of the Agencies.  CCAEJ shall provide The Peggs Company with copies of all correspondence sent to the Agencies relating to this AGREEMENT and shall likewise forward to The Peggs Company any correspondence received from the Agencies relating this AGREEMENT.  In the event that the Agencies comment negatively on the provisions of this AGREEMENT, CCAEJ and The Peggs Company agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.  If CCAEJ and The Peggs Company are unable to resolve any issue(s) raised by the Agencies in their comments, CCAEJ and The Peggs Company agree to expeditiously seek a settlement conference with the Magistrate Judge assigned to this matter to resolve the issue(s).  If the SETTLING PARTIES cannot resolve the issue(s) through a settlement conference, this AGREEMENT shall be null and void.  The date of (a) the Agencies' unconditioned approval of this AGREEMENT, (b) the expiration of the Agencies' review period, or (c) the SETTLING PARTIES' resolution of all issues raised by the Agencies, whichever is earliest, shall be defined as the "Agency Approval Date."

## COMMITMENTS OF SETTLING PARTIES

5.     **Compliance with General Permit**.  The Peggs Company agrees to operate the Facility in compliance with the applicable requirements of the General Permit and the Clean Water Act.

6.     **Additional Structural Best Management Practices**.  Within thirty (30) days of the Effective Date, unless otherwise indicated, The Peggs Company shall implement the following structural BMPs to improve the storm water pollution prevention measures at the Facility:

a.      By March 31, 2023, Peggs shall install an Aquip storm water filtration system (manufactured by StormwateRx) and generally described in the attached Exhibit A ("Aquip System"), to be sized in accordance with the "Design Storm Standards for Treatment Control BMPs" requirements set forth in Section X.H.6 of the General Permit.

b.      Peggs shall repair the damaged roof downspouts, marked on Exhibit B.

c.      To contain debris from grinding operations, Peggs shall install a welding shield on the chain-link fence adjacent to the grinding area, as marked on Exhibit B.

**7.      Confirmation of New Structural BMPs**.  Within two (2) weeks of the Effective Date, The Peggs Company shall confirm the installation of measures described above in Paragraph 6 that have been implemented prior to the Effective Date.  Within two (2) weeks of installation of each of the measures described above in Paragraph 6 that is installed after the Effective Date, The Peggs Company shall confirm the installation of said measures by submitting digital photos of those measures to CCAEJ.

**8.      Additional Non-structural Best Management Practices**.  Within thirty (30) days of the Effective Date, unless otherwise indicated, The Peggs Company shall implement the following non-structural BMPs to improve the storm water pollution prevention measures at the Facility

a.      Peggs will continue to hand sweep all work areas of the Facility on a daily basis, including areas where grinding activities occur.  Peggs will vacuum sweep all drive areas monthly.  Peggs will maintain a log of all its sweeping practices.

b.      Subsequent to the date of the Complaint, The Peggs Company moved all outdoor grinding operations to a covered area, as marked on Exhibit B.  Within this area, The Peggs Company shall sweep and dispose of debris subsequent to all grinding activities.

**9.      Amendment of SWPPP.**  Subsequent to the 60-Day Notice Letter and prior to the Effective Date of this AGREEMENT, The Peggs Company made a number of improvements

5

to the Facility's SWPPP map.  These include, but are not limited to, the following changes, as indicated on Exhibit B:

   a.      The Shipping and Receiving "Building" has been relabeled as a canopy.

   b.      The map now indicates the surface water conveyance in the western portion of the Facility between Equipment Maintenance and Covered Storage.

   c.      The map now indicates the diagonal surface water conveyance in the southwest corner of the Facility.

   d.      The map now indicates the vertical surface water conveyance on the western perimeter of the Storage and Maintenance Building.

   e.      The map now indicates the roof downspouts coming off of the Manufacturing Facility building.

   f.      The map has been modified to show that grinding activities occur under cover.

   g.      The area north of the Manufacturing Facility building has been relabeled to show that dis-assembly activities occur there.

   h.      The map has been relabeled to indicate the location of all structural BMPs.

Within thirty (30) days of the Effective Date, The Peggs Company shall amend the Facility's SWPPP to incorporate any additional changes, improvements, and best management practices set forth in or resulting from this AGREEMENT.  A copy of the amended SWPPP shall be provided to CCAEJ within ten (10) business days of completion.

   **10.    Monitoring of Storm Water Discharges**.  The Peggs Company shall collect and analyze storm water discharges from the Facility at the location marked on Exhibit B in accordance with the General Permit and this AGREEMENT for, at a minimum, pH, total suspended solids, oil and grease, zinc, nitrate plus nitrite as nitrogen, aluminum, and iron.

6

a.      For a twelve (12) month period subsequent to the installation of the Aquip treatment system required above in Paragraph 6(a), The Peggs Company shall collect and analyze at least four (4) storm water discharges from Qualifying Storm Events ("QSEs") at the Facility.  The Peggs Company shall endeavor to collect and analyze the first four (4) QSEs during the twelve (12) month period.  In the event that the Facility observes less than four (4) QSEs during that time period, The Peggs Company shall collect and analyze storm water discharges from the QSEs that it observes during that time period.

b.      **Monitoring Results**.  Results from the Facility's sampling and analysis during the term of this AGREEMENT shall be uploaded to the State Water Resources Control Board's ("State Board") Storm Water Multiple Application and Report Tracking System ("SMARTS") in accordance with the requirements of the General Permit.  Within seven (7) days of uploading said results, The Peggs Company shall provide notice to CCAEJ via e-mail that said results have been uploaded to SMARTS.

c.      With respect to the filtration socks placed in the diagonal surface water conveyance in the southwestern corner of the Facility, The Peggs Company shall conduct visual observations and take sufficient photos and/or videos during the 2023 calendar year to determine whether these socks cause flooding or divert storm water from the drain channel.  By December 31, 2023, The Peggs Company shall provide a report to CCAEJ conveying the results of said observations and providing a copy of the photos and/or videos taken during the visual observations.

11.     **Meet and Confer Regarding Exceedance of NALs**.  If the Facility's storm water sampling results during the twelve (12) month period subsequent to the installation of the Aquip treatment system required above in Paragraph 6(a) indicate that the average of the analytical results for a particular parameter exceed the annual Numeric Action Levels ("NALs") (as set forth in the General Permit) for that parameter, or if two or more analytical results from samples taken for any parameter exceed any instantaneous maximum NAL contained in the Permit, The Peggs Company agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and

7

implementing additional BMPs, aimed at reducing pollutant concentrations observed in storm water samples to at or below the NALs.

In furtherance of improving its storm water management practices, The Peggs Company shall prepare a written statement ("Action Plan") discussing:

    (1)    Any exceedance or exceedances of NALs;

    (2)    An explanation of the possible cause(s) and/or source(s) of any exceedance; and

    (3)    Responsive actions to improve its storm water management practices, including modified or additional BMPs designed to eliminate future NAL exceedance(s), and the dates that such actions will be taken.

Such Action Plan shall be e-mailed to CCAEJ not later than 30th day following the aforementioned twelve (12) month period in which the average of analytical results exceed NALs or in which there are two or more exceedances of instantaneous maximum NALs.

Upon receipt of the Action Plan, CCAEJ may review and comment on any identified or omitted additional measures. If requested by CCAEJ within thirty (30) days of receipt of such Action Plan, CCAEJ and The Peggs Company shall meet and confer to discuss the contents of the Action Plan and the adequacy of proposed measures to improve the quality of the Facility's storm water to levels at or below the NALs. If requested by CCAEJ, this process shall include a Facility inspection at a time and date mutually agreeable to the SETTLING PARTIES. Said inspection shall occur within sixty (60) days after the due date of the Action Plan, and would be limited only to areas of the Facility that could be exposed to storm water flows. If within twenty-one (21) days of the SETTLING PARTIES meeting and conferring, the SETTLING PARTIES do not agree on the adequacy of the additional measures set forth in the Action Plan, the SETTLING PARTIES may agree to seek a settlement conference with the Magistrate Judge assigned to this action pursuant to Paragraph 23 below. If the SETTLING PARTIES fail to reach agreement on additional measures, CCAEJ may bring a motion before the District Court consistent with Paragraphs 21-23 below. If CCAEJ does not request a meet and confer regarding the Action Plan within the thirty (30) day period provided for in this Paragraph, CCAEJ shall waive any right to object to such Action Plan pursuant to this AGREEMENT. The SETTLING PARTIES may agree in writing to extend any dates contained in this Paragraph in order to further this Paragraph's meet and confer procedure.

8

12. Any concurrence or failure to object by CCAEJ with regard to the reasonableness of any measures required by this AGREEMENT or implemented by The Peggs Company shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water discharges into compliance with applicable water quality criteria or the BAT/BCT requirements set forth in the General Permit.

13. **Provision of Documents and Reports**. During the life of this AGREEMENT, The Peggs Company shall provide CCAEJ with a contemporaneous copy of all documents submitted to the Regional Board or the State Board concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit. Alternatively, to the extent that The Peggs Company submits such documents to the Regional Board or State Board via SMARTS, The Peggs Company may satisfy this requirement by providing notice to CCAEJ via e-mail that said results have been uploaded to SMARTS within seven (7) days of uploading said results. Within thirty (30) days of a written request (via e-mail or regular mail) by CCAEJ, The Peggs Company also shall provide CCAEJ a copy of all documents referenced in this AGREEMENT from the year prior to the request, including but not limited to logs, photographs, or analyses.

14. **Mitigation Payment**. In recognition of the good faith efforts by The Peggs Company to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by The Peggs Company of any penalties, which have been disputed but may have been assessed in this action if it had been adjudicated adverse to The Peggs Company, the SETTLING PARTIES agree that The Peggs Company will pay the sum of twenty-five thousand dollars ($25,000.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to environmentally beneficial projects relating to water quality improvements in the Santa Ana River watershed. Payment shall be provided to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Tim Little. Payment shall be made by The Peggs Company to the Rose Foundation within forty-five (45) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT. The Peggs Company shall copy CCAEJ with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the SETTLING PARTIES within

9

thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

15.     **Fees, Costs, and Expenses**.  As reimbursement for CCAEJ's investigative, expert and attorneys' fees and costs, The Peggs Company shall pay CCAEJ the total sum of forty-six thousand dollars ($46,000.00).  Payment shall be made by The Peggs Company within thirty (30) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  Payment by The Peggs Company to CCAEJ shall be made in the form of a single check payable to "Lozeau Drury LLP," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CCAEJ that have or could have been claimed in connection with CCAEJ's claims, up to and including the District Court's entry of the Order.

16.     **Compliance Oversight Costs**.  As reimbursement for CCAEJ's future fees and costs that will be incurred in order for CCAEJ to monitor The Peggs Company's compliance with this AGREEMENT and to effectively meet and confer and evaluate storm water monitoring results for the Facility, The Peggs Company agrees to reimburse CCAEJ for its reasonable fees and costs incurred in overseeing the implementation of this AGREEMENT up to but not exceeding five thousand ($5,000).  Fees and costs reimbursable pursuant to this Paragraph may include, but are not limited to, those incurred by CCAEJ or its counsel to meet and confer regarding proposed treatment options, review water quality sampling reports, review photographs, review annual reports, discussion with representatives of The Peggs Company concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions, and water quality sampling.  Subsequent to the conclusion of the SETTLING PARTIES' meet and confer process, CCAEJ shall provide an invoice containing an itemized description of tasks performed and associated daily time for any fees and costs incurred in overseeing the implementation of this AGREEMENT.  Payments shall be made payable to "Lozeau Drury LLP" within thirty (30) days of receipt by The Peggs Company.

## NO ADMISSION OR FINDING

17.     Neither this AGREEMENT nor any payment pursuant to the AGREEMENT nor compliance with this AGREEMENT shall constitute evidence or be construed as a finding,

10

SETTLEMENT AGREEMENT: *Center for Community Action and Environmental Justice v. The Peggs Company–*
Case No. 5:21-cv-01700-JWH-SHK

adjudication, or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation.  However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

18.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective parents, affiliates, subsidiaries, divisions, insurers, successors, assigns, and current and former employees, attorneys, officers, directors, members, shareholders, and agents from any and all claims and demands of any kind, nature, or description whatsoever, known and unknown, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which it may presently have, or which may later accrue or be acquired by it, arising from the Complaint or 60-Day Notice Letter, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in the Complaint or 60-Day Notice Letter, for the alleged failure of The Peggs Company to comply with the Clean Water Act and/or the General Permit at the Facility, up to and including the Termination Date.

19.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint at the Facility up to and including the Termination Date.

11

20. Except as provided for in Paragraphs 21 through 23 of this AGREEMENT, CCAEJ and its officers, executive staff, members of its governing board shall not pursue, file, and/or support (by providing financial assistance, personnel time or other affirmative actions) any action against The Peggs Company or the Facility seeking relief for any alleged violation of the Clean Water Act, the General Permit, or any revisions thereto, at the Facility for the period of time beginning on the Effective Date and ending on the Termination Date.

## DISPUTE RESOLUTION PROCEDURES

21. Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer (telephonically or in-person) in good faith to resolve any dispute arising under this AGREEMENT within thirty (30) days of receiving written notification of a request for such a meeting. During the meet and confer proceeding, the SETTLING PARTIES will discuss the dispute and make reasonable efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute. The SETTLING PARTIES may, upon mutual written agreement, extend the time to conduct the meet and confer discussions beyond thirty (30) days.

22. In the event that such disputes cannot be resolved within twenty-one (21) days of the SETTLING PARTIES meeting and conferring, the SETTLING PARTIES may agree to seek a settlement meeting before the Magistrate Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, or are unable to obtain a settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the District Court.

23. In resolving any dispute arising from this AGREEMENT, the Court shall have discretion to award attorneys' fees and costs to either SETTLING PARTY. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court. The District Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof. The SETTLING PARTIES

agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference.

### GENERAL PROVISIONS

24. **Force Majeure**. The Peggs Company will notify CCAEJ if timely implementation of The Peggs Company's respective duties under this AGREEMENT becomes impossible due to circumstances beyond the control of The Peggs Company or its agents, and which could not have been reasonably foreseen and prevented by The Peggs Company's exercise of due diligence. Any delays due to The Peggs Company's respective failure to diligently make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this AGREEMENT will not, in any event, be considered to be circumstances beyond The Peggs Company's control. Financial inability will not, in any event, be considered to be circumstances beyond The Peggs Company's control.

    a. If The Peggs Company claims impossibility under this Section, it will notify CCAEJ in writing within twenty (20) days of the date that The Peggs Company discovers the event or circumstance that caused or would cause non-performance with the terms of this AGREEMENT. The notice must describe the reason for the non-performance and specifically refer to this section of this AGREEMENT. The notice must describe the anticipated length of time the non-performance may persist, the cause or causes of the non-performance, the measures taken or to be taken by The Peggs Company to prevent or minimize the non-performance, the schedule by which the measures will be implemented, and the anticipated date of compliance. The Peggs Company will adopt all reasonable measures to avoid and minimize such non-performance.

    b. The SETTLING PARTIES will meet and confer in good faith concerning the non-performance and, if the SETTLING PARTIES concur that performance was or is impossible, despite the timely good faith efforts of The Peggs Company, due to circumstances beyond the control of The Peggs Company that could not have been reasonably foreseen and prevented by the exercise of

13

SETTLEMENT AGREEMENT: *Center for Community Action and Environmental Justice v. The Peggs Company*–
Case No. 5:21-cv-01700-JWH-SHK

due diligence by The Peggs Company, new performance deadlines will be established by agreement of the SETTLING PARTIES.

    c.   If CCAEJ disagrees with The Peggs Company's notice, or in the event that the SETTLING PARTIES cannot timely agree on the terms of new performance deadlines or requirements, either SETTLING PARTY may invoke the dispute resolution process described in Paragraphs 21-23 of this AGREEMENT.  In such proceeding, The Peggs Company will bear the burden of proving that any delay in performance of any requirement of this AGREEMENT was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

**25.**    **Construction**.  The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, and the Clean Water Act or specifically herein.

**26.**    **Choice of Law**. This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

**27.**    **Severability**.  In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**28.**    **Correspondence**.  All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, overnight mail, or e-mail as follows:

| If to<br>CCAEJ: | Ana Gonzalez,<br>Executive Director<br>Center for Community Action<br>and Environmental Justice<br>P.O. Box 33124<br>Riverside, CA 92519<br>(951) 360-8451<br>ana.g@ccaej.org | Copy<br>to: | Michael R. Lozeau<br>Douglas J. Chermak<br>Lozeau Drury LLP<br>1939 Harrison Street, Suite 150<br>Oakland, CA 94612<br>(510) 836-4200<br>michael@lozeaudrury.com<br>doug@lozeaudrury.com |
| --- | --- | --- | --- |
| If to The<br>Peggs<br>Company: | Brett Nelson<br>Coleen Berlin<br>The Peggs Company, Inc.<br>4851 Felspar Street<br>Riverside, CA 92509<br>(951) 360-9170<br>cberlin@thepeggscompany.com | Copy<br>to: | Michael DeSantis<br>Lobb & Plewe LLP<br>4160 Temescal Canyon Rd, Suite 202<br>Corona, CA 92883<br>(951) 788-9410<br>mdesantis@lp-attorneys.com |

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices.

29. **Counterparts**. This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

30. **Assignment**. Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

31. **Modification of the Agreement**. This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

**32.**   **Full Settlement**.  This AGREEMENT constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

**33.**   **Integration Clause**.  This is an integrated AGREEMENT.  This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

**34.**   **Authority**.  The undersigned representatives for CCAEJ and The Peggs Company each certify that he/she is fully authorized by the SETTLING PARTY whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

THE PEGGS COMPANY, INC.

CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE

By: _____
Name:   Brett Nelson
Title:   President
Date: _____

By: _____
Name:   Ana Gonzalez
Title:   Executive Director
Date:   1/4/2023

16

32. **Full Settlement**. This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

33. **Integration Clause**. This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

34. **Authority**. The undersigned representatives for CCAEJ and The Peggs Company each certify that he/she is fully authorized by the SETTLING PARTY whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

THE PEGGS COMPANY, INC.

CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE

By: _Brett Nelson_ _____
44E205FECE7542A...

Name: __Brett Nelson_____
Title: __President_____
Date: 1/9/2023

By: _____
Name: __Ana Gonzalez_____
Title: __Executive Director____
Date: _____

# EXHIBIT A

# Stormwater Treatment System Quotation



| Date: | June 10, 2022 | Revision No. 0 |
|---|---|---|
| Quote Expiration Date: | July 31, 2022 | |
| Prepared for: | Coleen Berlin | |
| Project: | The Peggs Company, Inc. | |
| Project Site Address: | 4851 Felspar St, Riverside, CA, 92509 | |
| Regional Manager/Point of Contact: | Chris Fromme, cfromme@newterra.com | |
| Prepared By: | Joseph Golichnik, EIT jgolichnik@newterra.com | |

***System Design/Application Notes:***
1. Site Design Parameters:

    a. Drainage Area:      6.5 acres

    b. Design Treatment Flow:      974 gpm detained to 300 gpm (assumes 13,000 gal of detention)

    c. Pollutant(s) of Concern:      Zn, N

2. Achieving the benchmarks or numeric action levels consistently requires implementation of best management practices (BMPs) including source control, structural and treatment BMPs. Treatment BMPs are not designed to operate in the absence of other BMPs.

3. Treatment BMPs require routine maintenance. See system operation and maintenance manual for details.

## Section 1) Stormwater Treatment System

| Qty | Product Number | Description |
|---|---|---|
| 1 | Aquip® Model 300SBAN | Aquip enhanced stormwater filtration system designed for a treatment flow rate of 300 gpm with an above-ground system footprint of 13' x 38'. <br>System includes: <br>• Sealed tank structure with forklift pockets, two access ladders, up-flow pretreatment chamber with Omniplex media and integrated oil skimmer, and down-flow filtration chamber with layered inert and adsorptive biofiltration media for particulates, organics and dissolved pollutants removal <br>• Instantaneous and totalizing flow meter, flow control valve, adjustable head control, emergency overflow indicator, sample ports, and maintenance tool |
| 1 | Detention & Treatment Pump System | Detention & treatment pump system includes: <br>• Two 10000 gal (141"dia. x 160"h) tanks to provide a total of 13000 gallons of detention storage <br>•5 HP (230V/3Ph/10.4A) end-suction pump operating at 300 gpm with two single float switches and check valve. A standard control panel is included/required. |
| 1 | Design, Startup & Training | Startup & Training includes: <br>• On-site assembly and installation oversight by a StormwateRx trained technician (4 man-days maximum) <br>• Operation and Maintenance Manual and training <br>Note: Equipment assembly, installation and training must be completed during same visit. Delivery and installation to be scheduled a minimum two weeks in advance. <br>• Subsequent StormwateRx LLC representative visit charged at $125/hr plus expenses. |

## Section 2) Customer Responsibilities

**Aquip:**

- Site preparation including, but not limited to providing 13'x35' level pad
- Placement of Aquip, provide operator and crane capable of 13000 lbs pick for receiving equipment and loading media

**Pump and Bypass System:**

- Site preparation including, but not limited to providing excavation and preparation of base using 6 inch of 3/4 minus base rock, level and compacted to 95% at optimum moisture content
- Receiving, unloading, storing and installation of the vault
- Adequate overhead crane clearance for equipment installation
- Placement and installation of pump, floats, and pump plumbing
- Provide onsite labor (estimated 4 hours) for assembly of pump and bypass system

**Detention System:**

- Site preparation including, but not limited to providing a 13' x 26' or appropriately sized level surface
- Placement of tank(s), provide operator and crane capable of lifting a 160'' tall tank(s)
- Provide inlet and outlet plumbing connections for detention tank, and between detention tank and Aquip
- Contractor to install detention tank bulkhead fittings

**General:**

- Receiving, unloading and storing the equipment; equipment to be kept clean of trash & debris until installation. Note: customer may be charged standby time if delivery truck is not offloaded within one hour of arrival
- Minimum vertical equipment clearance of 14' above surface for installation & maintenance
- Provide and install all piping and appurtenances (i.e. all plumbing to and from StormwateRx equipment)
- Provide and install seismic anchors, if required
- Seasoning media per StormwateRx guidelines
- Installation of electrical and plumbing components in conformance with applicable codes, if required
- Provide inlet (untreated) and outlet (treated) stormwater monitoring results to StormwateRx for system tuning, if required
- Water testing labor and lab fees, if required
- Obtain all city, county, state, federal government and/or other permits for the site construction and operation of proposed system

| | |
|---|---|
| **Equipment Total:** | $319,300 |
| **Total:** | **$319,300** |
| **Deposit:** | **$159,650** |

stormwaterx.com | 8912 NE Alderwood Road, Portland, OR 97220 | Main 800.680.3543 Fax 800.407.2914

***Terms*** :

▪ This quotation and all products and services herein are subject and limited to the terms and conditions contained in StormwateRx's Standard Terms and Conditions of Sale, located at stormwaterx.com/quoteterms/. Issuance of any purchase orders in response to this Quote, or signature below, will be deemed acceptance of such terms.

▪ Prepaid & add (freight not included)

▪ State and local taxes not included

***Payment Terms:***

▪ 50% deposit required with confirming order

▪ 50% and taxes (if any) invoiced when product(s) ready to ship

▪ 50% restocking fee applies for all cancelled orders

***Delivery:***

▪ Normal = 14-16 weeks from receipt of order and deposit

▪ Delivery and installation to take place during Standard Business Hours.

▪ If product ready for delivery, but not accepted by customer within 30 days of product completion, storage fee of 2% of Equipment Total per month will apply.

**To Order:**

Complete, sign and return this quotation by fax or email with deposit check.

Authorizing Person (Print): _____

Authorizing Signature: _____

Date: _____

| **BILLING CONTACT INFORMATION** |
| --- |
| Contact Name: _____ |
| Contact Email: _____ |
| Mailing Address: _____ |
| City, State, Zip: _____ |

# Accessory Add Ons Quotation



| | | |
|---|---|---|
| Date: | June 10, 2022 | Revision No. 0 |
| Quote Expire Date: | July 31, 2022 | |
| Prepared for: | Coleen Berlin | |
| Project: | The Peggs Company, Inc. | |
| Site Address: | 4851 Felspar St, Riverside, CA, 92509 | |
| Regional Manager/Point of Contact: | Chris Fromme, cfromme@newterra.com | |
| Prepared By: | Joseph Golichnik, EIT jgolichnik@newterra.com | |

**Instructions:**

Please select accessories and check off "Select Item" box. Record "Selected Items Total". Sign and return to StormwateRx LLC.

| Accessory Item | Unit Price | Select Item |
|---|---|---|
| Aquip 300SBAN Seismic Kit. Kit icludes: standard concrete slab detail, 6x4x1/2-inch anchor angle and 5/8-inch machine bolt. To be attached to each foot, installed by owner. Set of 8. Kit does not include any mounting bolts for slab or any other materials pertaining to the foundation. | $4,160 | ☐ |
| Aquip 300SBAN Ratchet Side Mount Tarp includes a manually cranked side-rolling tarp system secured to the Aquip tank by hold down ratchets.   The tarps can be removed and reinstalled by one or two people. | $7,400 | ☐ |
| Aquip 300 Topper Media Supply: 3-inches replacement Coarse Inert Media for routine maintenance; freight included. Topper use is important and will improve performance and reduce long term maintenance cost.  RECOMMENDED. | $1,900 | ☐ |

**Selected Items Total: $** _____

**Terms** :

▪ This quotation and all products and services herein are subject and limited to the terms and conditions contained in StormwateRx's Standard Terms and Conditions of Sale, located at stormwaterx.com/quoteterms/.  Issuance of any purchase orders in response to this Quote, or signature below, will be deemed acceptance of such terms.

▪ Prepaid & add (freight not included)

▪ State and local taxes not included

**Payment Terms:**

▪ *50% deposit required with confirming order*

▪ *50% and taxes (if any) invoiced when product(s) ready to ship*

▪ *50% restocking fee applies for all cancelled orders*

**To Order:**

Complete, sign and return this quotation by fax or email with deposit check.

Select accessories and check off "Select Item" box. Record "Selected Items Total". Sign and return this page with signed quotation to StormwateRx, by fax or email.

Authorizing Person (Print): _____

Authorizing Signature: _____

Date: _____



NOTES:
1. STORMWATER RUNOFF FLOWS THROUGH EXISTING DRAINAGE INFRASTRUCTURE TO PROPOSED BYPASS PUMP VAULT. BYPASS PUMP VAULT SUPPLIED BY STORMWATERX, INSTALLED BY OTHERS.
2. TRIPLEX PUMP SYSTEM OPERATING AT 924GPM PUMPS TO TWO (2) 10,000 GALLON DETENTION TANKS. DETENTION SYSTEM SUPPLIED BY STORMWATERX, INSTALLED BY OTHERS.
3. END SUCTION PUMP DRAWS FROM DETENTION AT 300 GPM TO AQUIP FILTER. AQUIP TREATED STORMWATER DISCHARGES BY GRAVITY TO EXISTING OUTFALL.
4. RUNOFF IN EXCESS OF 300GPM BYPASSES TREATMENT. FLOWS TO EXISTING OUTFALL.

LEGEND
— EXISTING STORM DRAINAGE
↑ NEW GRAVITY FLOW
↑ NEW PUMPED FLOW
— APPROXIMATE TREATMENT AREA
▢ NEW TREATMENT INFRASTRUCTURE

AQUIP 300SBE INDUSTRIAL STORMWATER FILTER

END SUCTION PUMP

10,000 GALLON DETENTION TANKS

UNTREATED STORMWATER PUMPED FROM BYPASS PUMP VAULT TO DETENTION, 974 GPM

AQUIP TREATED AND UNTREATED STORMWATER FLOWS BY GRAVITY TO EXISTING DOWNSTREAM OUTFALL

N

SCALE IN FEET
0    5    10

N

SCALE IN FEET
0   50   100

STORMWATER TREATMENT LAYOUT
THE PEGGS COMPANY, INC.
RIVERSIDE, CA

DATE: 06/09/2022 | SCALE: NONE | FILE NAME: Peggs Co Proposed Lay | DRAWN: JG

DATE | REVISIONS

CHECKED: TL

SHEET

1

1 OF 1

stormwaterRx
a newterra company
800.680.3543 | stormwaterx.com

# EXHIBIT B

